[Cite as *In re P.M.*, 2026-Ohio-2901.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
LICKING COUNTY, OHIO

| | |
|---|---|
| IN THE MATTER OF:<br><br>P.M. | Case No. 26CA00022<br><br>Opinion And Judgment Entry<br><br>Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case No. F2024-0134<br><br>Judgment:   Affirmed<br><br>Date of Judgment Entry: July 28, 2026 |

BEFORE:   William B. Hoffman, Robert G. Montgomery, and Kevin W. Popham, Judges

APPEARANCES: Jermaine L. Colquitt, for Appellant; Kenneth W. Oswalt, Assistant Prosecuting Attorney, for Appellee.

OPINION

*Popham, J.,*

{¶1}   Mother appeals the February 23, 2026, judgment entry of the Licking County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of P.M. to Licking County Job and Family Services ("LCJFS"). For the reasons below, we affirm.

*Facts & Procedural History*

{¶2}   S.M. ("Mother") is the Mother of P.M., who was born on May 4, 2016. Despite multiple attempts to establish paternity through DNA testing, no father was legally established.

**{¶3}** In November of 2023, LCJFS received information indicating that Mother was not complying with the terms of her probation, including failing drug tests for methamphetamines. The agency also received reports of domestic violence in the home. LCJFS attempted to contact Mother, but she did not respond. The agency later learned that Mother left the home, leaving P.M. in the care of his maternal grandmother.

**{¶4}** Mother was arrested on December 25, 2023. LCJFS filed a dependency complaint on December 29, 2023. The juvenile court granted emergency custody of P.M. to the maternal grandmother and ordered protective supervision by LCJFS. On January 24, 2024, Mother was released from jail and returned home. Five days later, the court removed P.M. from the maternal grandmother's custody after determining that she was unable to protect him from Mother.

**{¶5}** Because of statutory time constraints, the agency dismissed the original dependency complaint and refiled it on March 26, 2024. The following day, P.M. was placed in the emergency custody of LCJFS. At an uncontested adjudicatory hearing held on June 11, 2024, the trial court adjudicated P.M. dependent. An uncontested dispositional hearing immediately followed, and the court granted temporary custody of P.M. to LCJFS. The court conducted semiannual review hearings in June 2024, December 2024, June 2025, and December 2025.

**{¶6}** The case plan adopted by the trial court required Mother to submit to random drug screens requested by LCJFS and produce negative results; complete a drug and alcohol assessment through an agency-approved provider and follow all recommendations; obtain stable employment and suitable housing; demonstrate the ability to provide for P.M.'s basic

needs on a long-term basis; maintain a clean and appropriate home; complete an agency-approved parenting course; and establish P.M.'s paternity.

**{¶7}** On February 28, 2025, LCJFS moved for permanent custody of P.M. Due to issues with service of process, the agency refiled its motion on June 16, 2025. A permanent custody hearing was initially scheduled for August 13, 2025, but was continued after several parties, including Mother, requested additional time due to service issues. The hearing was rescheduled for October 29, 2025. Mother did not appear for that hearing - advising her attorney the day of the hearing that she was experiencing transportation problems. At the request of counsel of P.M.'s sibling, the hearing was again continued until December 19, 2025.

**{¶8}** Mother was served with notice of the December 19, 2025, permanent custody hearing by publication. At the outset of the hearing, Mother's counsel informed the court that Mother had contacted him that morning, claiming she had retained new counsel and was participating in an inpatient drug treatment program. Counsel orally requested a continuance of the hearing. When the court inquired whether Mother had provided documentation verifying her participation in the treatment program, counsel indicated that she had not. Mother also failed to identify the attorney she allegedly retained, and no notice of appearance had been filed. The trial court denied the motion to continue, and Mother's appointed counsel represented her throughout the hearing.

**{¶9}** Brad Annett ("Annett"), the ongoing LCJFS caseworker assigned to P.M.'s case, testified that concerns leading to P.M.'s removal included Mother's substance abuse, domestic violence in the home, unstable housing and employment, and concerns regarding

her mental health. Annett testified that he attempted to connect Mother with local resources, including Ohio Guidestone, but she declined to utilize these resources.

{¶10} Although Mother refused numerous drug screens, Annett was able to drug screen Mother approximately three times. She tested positive for methamphetamines. Mother completed a substance abuse treatment program in Athens County as part of her probation. However, after completing the program, she again tested positive for methamphetamines.

{¶11} Mother had supervised visits with P.M. at the discretion of the agency and the guardian ad litem. The agency scheduled bi-weekly visits. Although Mother initially attended the visits, she soon began arriving late or failing to appear altogether. As a result, she was placed on "call-in" status, requiring her to confirm in advance that she would attend before P.M. was transported for visitation. Mother's final visit with P.M. occurred on March 20, 2025.

{¶12} On March 26, 2025, a warrant was issued for Mother's arrest in Athens County. The warrant remained active at the time of the permanent custody hearing. Annett testified that after March 26, 2025, he repeatedly attempted to locate Mother by calling her cell phone, contacting her probation officer, visiting the address Mother had provided, leaving his business card there, and speaking with Mother's mother, who stated that she had not seen Mother. Annett's last contact with Mother occurred on March 20, 2025, following a supervised visitation.

{¶13} Annett testified that Mother failed to remedy the conditions that led to P.M.'s removal from the home, including her substance abuse and unresolved mental health concerns. He further testified that Mother never provided verification of stable income or suitable housing.

{¶14} According to Annett, P.M. is doing well in foster care and has bonded with his foster mother. Annett opined that granting permanent custody to LCJFS was in P.M.'s best interest.

{¶15} The guardian ad litem, J.R. Stremski, testified that he provided Mother with his business card in 2024 and asked her to remain in contact with him. However, Mother never contacted him. Despite sending Mother additional correspondence (letters), Stremski never received a response from Mother.

{¶16} Stremski described P.M. as a "wonderful child" who is social and is actively involved in sports. He testified that P.M. understood that he could not return to Mother's care and expressed a desire to remain in his current placement. Stremski further testified that P.M. deserved permanency and that granting permanent custody to LCJFS was in the child's best interest.

{¶17} The trial court issued a judgment entry on February 23, 2026, containing findings of fact and conclusions of law. The trial court found that Mother failed to remedy the conditions that caused P.M.'s removal, citing her longstanding substance abuse, failure to successfully complete treatment, failure to obtain stable housing and income, and the outstanding arrest warrant.

{¶18} The trial court further found that Mother failed to substantially remedy the conditions causing P.M. to be placed outside the home pursuant to R.C. 2151.414(E)(1); that Mother's chronic chemical dependency and unresolved mental issues rendered her unable to provide an adequate permanent home for P.M. under R.C. 2151.414(E)(2); that Mother demonstrated a lack of commitment toward P.M. by failing to regularly support, visit, or communicate with him under R.C. 2151.414(E)(4); and that Mother had abandoned P.M.

under R.C. 2151.414(E)(10) and R.C. 2151.414(B)(1)(b) because she had no contact with him after March 20, 2025. The court also made findings under R.C. 2151.414(E)(16), noting that Mother had not visited P.M. since March 2025, and, despite identifying several potential fathers, had never established P.M.'s paternity. Finally, after considering the factors set forth in R.C. 2151.414(D)(1), the court concluded that granting permanent custody of P.M. to LCJFS was in the child's best interest.

{¶19} Mother appeals the February 23, 2026, judgment entry of the Licking County Court of Common Pleas, Juvenile Division, and assigns the following as error:

{¶20} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY DENYING MOTHER'S REQUEST FOR A CONTINUANCE, WHERE MOTHER HAD RETAINED NEW COUNSEL AND ENTERED INPATIENT TREATMENT ON THE DAY OF TRIAL, AND THE DENIAL DEPRIVED HER OF A MEANINGFUL OPPORTUNITY TO PARTICIPATE IN THE PERMANENT CUSTODY PROCEEDING."

{¶21} "II. THE TRIAL COURT'S FINDINGS UNDER R.C. 2151.414(B)(1)(A), R.C. 2151.414(E), AND R.C. 2151.414(D)(1) WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶22} We review a trial court's decision to grant or deny a continuance for an abuse of discretion. *Hartt v. Munobe*, 67 Ohio St.3d 3, 9 (1993). An abuse of discretion connotes more than a mere error in law or judgment; it implies an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Where, as in this case, the denial of a continuance implicates a parent's

fundamental liberty interest in the care, custody, and management of his or her child, courts analyze whether the overall proceeding was fundamentally unfair under due-process principles. *In re Gibby*, 2004-Ohio-2708, ¶ 24-24 (5th Dist.).

**{¶23}** In evaluating whether the trial court abused its discretion by denying a continuance request, we apply a balancing test considering (1) the length of the requested delay, (2) whether other continuances had been requested and granted, (3) the convenience or inconvenience to the parties, witnesses, counsel, and court, (4) whether the delay was for legitimate reasons or was instead dilatory, purposeful, or contrived, (5) whether the party contributed to the circumstances giving rise to the request, (6) whether denying the continuance resulted in identifiable prejudice to the party's case, and (7) the complexity of the case. *Id.* at ¶ 28-29.

**{¶24}** Applying these factors, we find no abuse of discretion. Mother did not indicate how long of a continuance she sought. The permanent custody hearing had already been continued twice, and the motion for permanent custody had been pending for six months. Moreover, P.M. had a significant interest in achieving permanency without further delay.

**{¶25}** The record also supports the trial court's determination that Mother failed to establish a legitimate basis for another continuance. Mother had been required to participate in substance abuse treatment as part of her case plan since March 28, 2024, yet she waited until the day of the hearing to allegedly enter an inpatient treatment program. Mother did not provide her counsel with documentation to present to the court verifying that Mother was in treatment, she did not identify the attorney she claimed to have retained, and no notice of appearance was filed with the clerk of courts. Thus, on balance, the factors weigh against Mother and justify the trial court's denial of her motion to continue.

**{¶26}** Further, the adjudicatory proceeding was fundamentally fair, given Mother's notice of the complaint, Mother's actual knowledge of the date and time of the permanent custody hearing, and Mother's lack of communication with her attorney, LCJFS, and the GAL since March of 2025. Counsel for Mother remained on the case and continued to zealously represent her during the permanent custody hearing. Thus, Mother's due process rights were adequately protected by counsel, who actively participated in the proceedings. *In re T.B.*, 2019-Ohio-1742, ¶ 22 (5th Dist.); *In re R.H.*, 2012-Ohio-1811, ¶ 10 (5th Dist.).

**{¶27}** The trial court's decision to deny Mother's continuance request was not arbitrary, unreasonable, or unconscionable. Mother's first assignment of error is overruled.

II.

**{¶28}** In her second assignment of error, Mother contends the trial court's findings were against the manifest weight of the evidence.

*Permanent Custody*

**{¶29}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

**{¶30}** Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* If some competent and credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not

substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978).

{¶31} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal Co., Inc., v. Cleveland*, 10 Ohio St.3d 77 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997).

{¶32} R.C. 2151.414 sets forth guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice of the filing of a motion for permanent custody of a child by a public children services agency.

{¶33} Following the hearing, R.C. 2151.414(B) authorizes the court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, has not been in the temporary custody of the children services agencies for twelve or more months of a consecutive twenty-two month period, and the child cannot be placed either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period; or (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been

adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶34} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the circumstances delineated in R.C. 2151.414(B)(1)(a) through (e) is present before proceeding to a determination regarding the best interest of the child. In this case, as to Mother, the court made a finding pursuant to R.C. 2151.414(B)(1)(a) (reasonable time) and R.C. 2151.414(B)(1)(b) (abandonment).

*Manifest Weight*

{¶35} The standard of review for manifest weight in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [or decision] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶36} Because the finder of fact is in the best position to weigh the credibility of the witnesses and observe their demeanor, a reviewing court will always be mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 2012-Ohio-2179.

*Reasonable Time*

{¶37} Mother argues the trial court's determination that P.M. could not or should not be placed with her within a reasonable time is against the manifest weight of the evidence.

{¶38} Pursuant to R.C. 2151.414(E), the trial court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable

time or should not be placed with either parent. The statute also specifically provides that if the trial court determines, by clear and convincing evidence, at a hearing that one or more of the factors listed in (1)-(15) exist, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. *See In re William S.*, 75 Ohio St.3d 95 (1996). The trial judge in this case relied on five of these factors: R.C. 2151.414(E)(1), (E)(2), (E)(4), (E)(10), and (E)(16).

*R.C. 2151.414(E)(1) & R.C. 2151.414(E)(16)*

{¶39} R.C. 2151.414(E)(1) applies when "notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." In making this determination, "the court shall consider parental utilization of medical, psychiatric, psychological, and other social rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." *Id.*

{¶40} R.C. 2151.414(E)(16) permits the trial court to consider any other relevant factor supported by the record. Here, the trial court found significant that Mother had not visited P.M. since March 2025 despite being permitted to do so, and that paternity had never been established for P.M.

{¶41} Mother contends the trial court's findings under these factors are against the manifest weight of the evidence. Specifically, she argues that she entered inpatient treatment

on the day of the hearing and that an active warrant for her arrest prevented her from attending supervised visitation sessions.

{¶42} We find clear and convincing evidence in the record supporting the trial court's determination that R.C. 2151.414(E)(1) applies. Mother failed to substantially remedy the conditions that caused P.M. to be placed in the custody of LCJFS, and she was unable to provide an adequate permanent home for P.M. LCJFS provided Mother with a case plan outlining the steps necessary for reunification. However, Mother failed to complete the majority of her case-plan requirements, including failing to address her substance-abuse issues, continued mental-health concerns, failing to provide proof of income, failing to provide stable housing, and failing to consistently visit P.M.

{¶43} Regarding Mother's claim that she entered inpatient treatment on the day of the hearing, we first note that Mother failed to provide any evidence confirming that she had actually entered treatment. Further, Mother had been ordered to obtain treatment in March of 2024 but did not enter treatment until December of 2025. Although counsel for Mother requested a continuance of the hearing, delaying the proceedings until Mother was released from the treatment program and potentially resolved the outstanding warrant would have extended the matter beyond its statutory sunset date. *In re O.S.*, 2025-Ohio-4867, ¶ 12 (5th Dist.). Annett testified that, as of the date of the hearing, Mother still needed to complete extensive services required under her case plan due to her criminal history, mental-health history, and substance-abuse history.

{¶44} As to Mother's argument that the warrant for her arrest prevented her from visiting P.M. and completing her case-plan requirements, Mother's own actions resulted in the issuance of the warrant. The warrant and her resulting inability to care for P.M.

demonstrate Mother's continued inability and unwillingness to provide an adequate permanent home for the child.

{¶45} We find clear and convincing evidence was presented to the trial court that P.M. could not be placed with Mother within a reasonable period time because Mother failed to remedy the conditions that led to P.M.'s removal and was unable to provide a permanent home for him.

*R.C. 2151.414(E)(2)*

{¶46} R.C. 2151.414(E)(2) provides an additional basis for concluding that a child cannot be placed with a parent within a reasonable amount of time or should not be placed with a parent. Here, the trial court found R.C. 2151.414(E)(2) applicable, determining that Mother's chemical dependency and mental health concerns were so severe that she could not provide an adequate permanent home for P.M. within one year.

{¶47} Mother contends this finding is against the manifest weight of the evidence because the record contains no expert testimony establishing such a prognosis. Mother also relies on the fact that she allegedly entered inpatient treatment.

{¶48} Annett testified regarding Mother's continued use of methamphetamine, including after she completed a treatment program required as part of her probation in Athens County. He further testified that Mother never completed an alcohol and drug assessment through an agency-approved provider, never completed a mental health assessment through an agency-approved provider, and never provided confirmation that she attended a treatment program.

{¶49} Mother's argument regarding the lack of expert testimony and the sufficiency of Annett's testimony is unpersuasive. This Court has previously rejected the same argument.

*In re N.K.*, 2026-Ohio-1087, ¶ 74 (5th Dist.). A caseworker may offer lay-opinion testimony regarding a parent's functioning and observed mental-health-related concerns in a permanent-custody proceeding. *In re S.D-S.*, 2024-Ohio-255, ¶ 38 (8th Dist.).

**{¶50}** Regarding Mother's alleged entry into inpatient treatment, Mother failed for more than one year to obtain treatment as required by her case plan. "Belated and sporadic attempts to cooperate with a case plan are insufficient compliance to warrant reunification." *In re N.K.* at ¶ 64, citing *In re Wilson*, 1999 Ohio App. LEXIS 533 (8th Dist. Feb. 18, 1999). Additionally, Mother failed to provide either her counsel or the trial court with documentation establishing that she actually entered an agency-approved treatment program.

**{¶51}** We find clear and convincing evidence was presented to the trial court that Mother's chemical dependency and mental health concerns were so severe that she could not provide an adequate permanent home for P.M. presently or within one year.

*R.C. 2151.414(E)(4)*

**{¶52}** R.C. 2151.414(E)(4) provides another basis for concluding that a child cannot be placed with a parent within a reasonable amount of time or should not be placed with a parent. Under this factor, the trial court found that Mother demonstrated a lack of commitment toward P.M. by failing to regularly support, visit, or communicate with him when able to do so, or by engaging in other actions demonstrating an unwillingness to provide an adequate permanent home.

**{¶53}** The trial court's finding under this factor was based upon Mother's failure to visit or communicate with P.M. since March 2025, as well as her lack of income and stable housing, and her continued drug use.

{¶54} Mother argues that because the trial court relied on the same facts when analyzing other statutory factors, including R.C. 2151.414(E)(1), (E)(2), and (E)(10), it was prohibited from considering those facts under R.C. 2151.414(E)(4). Mother cites no relevant legal authority supporting this argument. As this Court has previously recognized, "the statute does not prohibit this approach." *In re N.K.*, 2026-Ohio-1087, ¶ 87 (5th Dist.).

{¶55} Annett testified that Mother had not visited or contacted P.M. since March of 2025. He further testified that Mother failed to provide proof of stable income or housing. Therefore, the trial court's finding under R.C. 2151.414(E)(4) is not against the manifest weight of the evidence.

*R.C. 2151.414(E)(10)*

{¶56} We also find clear and convincing evidence in the record to support the trial court's determination that Mother abandoned J.L. A child is presumed abandoned when the child's parent "ha[s] failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C).

{¶57} Annett testified that Mother's last contact with P.M. occurred on March 20, 2025, which was more than ninety days before the permanent custody hearing. Therefore, Mother was presumed to have abandoned P.M., and the burden shifted to her to rebut the presumption pursuant to R.C. 2151.011(C).

{¶58} Mother argues that she rebutted the presumption of abandonment because an outstanding warrant prevented her from maintaining contact with P.M. However, the warrant was the result of Mother's own actions, not any action by the agency, and it does not rebut the presumption of abandonment. *In re K.L.*, 2026-Ohio-266, ¶ 33 (8th Dist.).

Additionally, incarceration "does not rebut the presumption of abandonment." *In re M.A.*, 2024-Ohio-3432, ¶ 26 (5th Dist.), citing *Matter of M.G.*, 2023-Ohio-696, ¶ 48 (5th Dist.).

*R.C. 2151.414(B)(1)(b)*

{¶59} Mother also challenges the trial court's finding pursuant to R.C. 2151.414(B)(1)(b) that she abandoned P.M. As detailed above, there is clear and convincing evidence to support the trial court's determination that Mother abandoned P.M.

*Best Interest*

{¶60} In her second assignment of error, Mother contends the trial court's determination that the best interest of the child would be served by granting permanent custody to LCJFS was against the manifest weight of the evidence.

{¶61} We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of the child should be accorded the utmost respect, given the nature of the proceeding and the impact that court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 2000 WL 1700073, * 3 (5th Dist. November 13, 2000), citing *In re Awkal*, 95 Ohio App.3d 309, 316 (8th Dist. 1994).

{¶62} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement

and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶63}** Mother's primary argument is that LCJFS failed to appropriately consider maternal grandmother as a placement for the child. However, the court must consider all of the elements in R.C. 2151.414(D), as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. *In re Schaefer*, 2006-Ohio-5513. *In re Schaefer* made it clear that a trial court's statutory duty, when determining whether it is in the best interest of a child to grant permanent custody to an agency, does not include finding by clear and convincing evidence that no suitable relative was available for placement. *Id.* R.C. 2151.414 "requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than others." *Id.* at ¶ 64.

**{¶64}** The focus on the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re Awkal*, 95 Ohio App.3d 309, 316 (8th Dist. 1994).

**{¶65}** We find the trial court did not commit error in finding that granting permanent custody to LCJFS is in the best interest of the child.

**{¶66}** Annett testified it is in the best interest of P.M. for permanent custody to be granted to LCJFS. P.M. is happy in his current foster home and is bonded with his foster

mother. The GAL also testified that it is in the best interest of P.M. for permanent custody to be granted to LCJFS. He testified that P.M. is a "wonderful" child who is social and loves sports. Further, that P.M. recognizes that he is unable to return to Mother's home, and, since that is not an option, he would like to stay with his current foster mother.

{¶67} We find the trial court properly considered and weighed the factors in R.C. 2151.414(D) and the trial court's conclusion that the granting of permanent custody to LCJFS is in the best interest of the child is supported by competent and credible evidence. Further, the trial court did not lose its way and create a manifest miscarriage of justice such that the decision must be reversed and a new trial ordered. Mother's second assignment of error is overruled.

{¶68} Based on the foregoing, Mother's assignments of error are overruled.

{¶69} For the reasons stated in our Opinion, the judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.

{¶70} Costs to Mother, S.M.


By: Popham, J.

Hoffman, P.J. and

Montgomery, J., concur